All right, you may proceed. Good morning, Your Honors, and may it please the Court, I'm Brian Killian on behalf of Vonage. Before I explain why Vonage's arbitration agreement is not unconscionable, I'd like to address the threshold question of who gets to decide the unconscionability of Vonage's arbitration agreement. The Court sent an order around a few weeks ago asking us to explain where we preserve these arguments. And I think that the letters that the parties filed last week have explained that these arguments are all preserved. Merkin? I don't think so. I didn't read it that way. I thought your argument below was different from the paint. Sure. I'll try to explain it to Your Honor. Well, you just didn't make that particular argument. Was the case not decided yet or something? I guess I don't know which particular argument. The paint argument. You made a delegation argument. That was our primary argument below, absolutely, was based on that. It was the argument below, right? That's what the district court ruled on. I disagree with that, Your Honor. We quoted in our letter a page from our reply brief where we included sort of a summary, but it was nevertheless a brief. Do you think it was fairly presented to Judge Schneider? I do, Your Honor. I believe it was fairly presented because for two reasons. First is we included the full quotation that explained that we believe that the majority of the arguments that they, Merkin and Smith, were presenting were, in fact, a broad side on the entire terms of service and not just the arbitration agreement. We quoted Renner Center for that because we've been quoting Renner Center for the entirety of the primary argument we raised below. But the quote that we took from Renner Center was the Supreme Court's articulation of the general prime of paint rule. And then we applied that in the next two paragraphs. But she didn't. So where, in her opinion, did she rule on that? She did not. And that was one of the reasons that we objected to this argument on appeal. We said we presented it to her. Let's assume you presented it. I don't think you went on it, do you? This is plainly an attack on the arbitration clause. There's no other. They're not looking to get rid of their Vonage service. That would be that they said we want to stop dealing with Vonage. They simply said we want to take our disputes with Vonage to court rather than to arbitrate them. But, Judge Hurwitz, I believe that they've gone a bit beyond the arbitration agreement in the provisions of the terms of service that they're objecting to. Well, perhaps they've objected to the wrong terms of service. And that's a separate issue. I don't mean the version. I mean the specific terms within the 2013 terms of service. By the way, are we dealing with that? Thank you for reminding me. Are we dealing with the 2013 contract here? We are, Your Honor. Even though it was not? Did they bring suit first and then the 2013 contract was published? There is evidence in the record, the affidavit that we submitted below the Snowden declaration, that the 2013 terms of service, the October 1st 2013 terms of service, went into effect just a few days after they filed suit. Right. They seem to agree that we're dealing with the 2013 contract. That's correct. Because, as Mr. Snowden said in the declaration, the arbitration agreement hadn't changed since February 2012. So what Vonage has is a large terms of service that covers all of the products and offerings that they offer. You can spend as much time on the prime of payment argument as you want. I guess my sense is that if you haven't waived it, it's still not very efficacious for you, because I think they're attacking the arbitration agreement. Well, I'd like a chance to persuade you, Your Honor. Well, and you've written in your brief on it. I think there are more interesting questions in the case, but go on. I'm happy. If the rest of the panel doesn't want to hear about it, I'm happy to move on to the other aspects of the case. But I do think that the reason that their prime of payment argument, why the district court erred, is actually reinforced by this court's decision in the Negrampa case. The Negrampa case asked a substantive question. What is the crux of the complaint? What are these people challenging? Are they trying to get out of the entire agreement, or are they trying to get out of just the arbitration? So what's the evidence that they're trying to get out of the agreement? For all I know, they still have Vonage service. For all I know, well, at the time they brought suit, they still had Vonage service. And nobody is saying, let me out of this Vonage agreement. I'd rather deal with AT&T. What they're trying to get out of, Your Honor, are non-arbitration provisions of the terms of service, like the time limitations that apply to claims, whether they are arbitrated or whether they are litigated. Well, and those may be incorrect arguments about unconscionability. But the prime of payment issue is whether they're trying to get rid of the whole contract, or whether they're trying just to get rid of the arbitration clause. Whether they're trying to get rid of just the arbitration clause, or whether they're trying to get rid of more than the arbitration clause. The whole contract is even farther than that, Your Honor. Do you understand them to be saying that if this case were litigated, that those other provisions would not apply? Yes, that's exactly what they said below, on page 35 of the excerpts of record, where they told the court, quote, if the terms of service were enforced, Vonage customers would have no need to arbitrate. In their view, the time limits that apply during litigation defeat their claims. The indemnity provisions that apply in litigation defeat their claims. And the releases of liability defeat their claims. We think because those other non-arbitration specific portions of the terms of service, they believe, defeat their claims, whether they're arbitrated or whether they're litigated, that their attack on the unconscionability of the terms of service was broader than just an attack on the arbitration provisions. So what else did they attack, in your view? Can you go down the, let's assume that the right forum is deciding this case, for the moment. And let's assume it's actually in front of us. What are you arguing that was also attacked, in addition to the arbitration agreement? Sure, the releases of liability that are in the terms of service, the time limitations that apply to all claims, whether they're arbitrated or litigated, and the indemnities. That's on page 42 of the excerpts of record, which is their opposition to motion to compel, where they talk about these non-arbitration provisions. And the reason we know why these provisions apply beyond just arbitration is because of the exceptions to the arbitration agreement. The parties have agreed not to arbitrate all of their disputes. There will be some disputes that will be litigated. So these provisions that apply. Which disputes will be litigated? Small claims disputes, disputes over the validity of intellectual property, claims involving injunctive relief. That's exception five. And apparently, unlike the earlier arbitration provision, Vonage's is mutual in that respect. Although, with respect to intellectual property claims, I'm having a hard time figuring out how they would ever have an intellectual property claim against you. Sure, well, Your Honor, it's not that the provision applies to intellectual property claims writ large. I know, I mean, it's much more specific. I understand. I'm using your terms, so we don't have to fight about it. But I wish to be precise, because this is an error that the district court made below. The exception applies to disputes that arise from the validity of intellectual property claims. Merkin and Smith are the only ones who could object to the validity of our intellectual property. If they have not- Because you'll never have an intellectual property claim against them? I think that's unlikely, yes. But more to the point, if we just had an intellectual property claim, that would, I believe, be arbitrated. But when they interject the validity of our intellectual property, then they're the ones who get to bring- So if we go, I'm trying to isolate the allegedly substantive unconscionable- Aspects. Aspects of this agreement. There is a unilateral modification clause here, is there not? There is, yes. And you've been sitting here. I have, and I wish to cite to the court two cases that I think explain why California does not treat unilateral modification clauses as per se substantively unconscionable. In fact, the most important of those cases is the SERPA case, which we've cited in our briefs. In the SERPA case, and I could get the quotation  In the SERPA case, there was a unilateral modification provision, and the California Court of Appeal held that it did not render the agreement substantively unconscionable because the covenant of good faith and fair dealing applies to unilateral modification provisions. And the objections that the party was raising to the substantive unconscionability of the contract were adequately addressed by the covenant of good faith and fair dealing.  in the earlier argument that you drew a distinction between unilateral modification provisions as substantively unconscionable, their mere presence in the terms of service or in the arbitration agreement. Does the existence of the term as a substantive matter render the agreement unconscionable? And then a procedural aspect to it. Does the use of a modification provision render the contract oppressive and surprising such that it has a procedural component? It is procedurally unconscionable. Now the cases that we've cited and all the cases that we've been able to find deal with just the substantive unconscionability of a unilateral modification provision. And we believe pretty consistently show that it is not automatically, it is not, in fact, not even automatically, just not substantively unconscionable to have a unilateral modification provision written into the agreement. And again, I will distinguish from a case like Douglas versus Talk America, where there was no unilateral modification provision in the contract, and the party just made a modification. And this court held that that was unconscionable. So we have an instance here where the provision is actually written into the contract. Notice is given at the time of sign-up that we will make changes. And those changes then were made over many years. But didn't you, I mean, doesn't the fact that you changed the agreement over 30 times in the history of this agreement show that there's some kind of oppression going on? I disagree, Your Honor, for a couple reasons. First off, that number of the 30-some-odd changes that have happened over the years, those are the number of changes to the entire terms of service, which, again, reinforces our argument that I've perhaps not persuaded the court that there's a prime-of-pain violation here. Doesn't that, I mean? The actual arbitration agreement itself changed only a handful of times over the course of those years. Right, and didn't it become more favorable to Vonage over the years? Oh, no, on the contrary. It became much more favorable to consumers over the year, and the district court noted that in her opinion. We got rid of the requirement that arbitrations take place in Vonage's In New Jersey? States of New Jersey. I'd like that, but it seems to me California consumers wouldn't. We got rid of the requirement that, we added a provision that Vonage would pay for the arbitration fees, and then we included the exceptions, and we believe those exceptions are mutual. Can I ask you something? The implications for, I mean, all cell phone providers have these terms of service? I can't speak to cell phone. Vonage is a provider of voiceover IP, which is sort of a plug-in telephone service for computers. But all these terms of service that people click on or sign on to for purposes of buying their devices have something like this in them, right? I believe that's the case, yeah, and I would, yes. So, I mean, if we were to affirm the district court, this could have implications for a lot of different kinds of providers, maybe more implications in California than in other parts of the country. I think that's correct, Your Honor. Yeah, there's a broad-sweeping effect of the decision below. In the, the reality is what Vonage does with its terms of service, and this, again, is in Snowden's declaration, which is attached to the reply that we filed below. It makes changes in light of several things. When it adds a new line, new product line, new services, it changes to update to say, here's a new product, here's the terms of service that apply to that, but it doesn't touch the entirety. This isn't tinkering constantly with all the provisions of the terms of service. Similarly, when the law changes, particularly the law of arbitration, Vonage responds in a way so that the arbitration agreement, we believe, can be more consumer-friendly. I would like to address the substantive unconscionability holding that the district court made below because. Well, and I'm trying to identify what the district court found substantively unconscionable. The district court believed that the exceptions to arbitration in section 14.10 of the arbitration agreement were lopsided using the standard that we call the likelihood approach. Who is more likely to take advantage of these exceptions than the other? The court said that three of the exceptions favored Vonage and didn't find that any favored the client. Does that unconscionability doctrine survive Concepcion? No, we believe that it does not, and the California Court of Appeal in the Boese case, B-O-E-S-E, suggested that there would be a preemption of that likelihood approach because it has been applied only to arbitration agreements, which this court in the Mortensen case said is a violation of Concepcion, and it derives its meaning from the fact that it is being applied to an arbitration agreement. Furthermore, as we pointed out in a 28J letter last summer when the California Supreme Court decided the decision in Sanchez, we think that's very important because Sanchez was a case where an arbitration agreement had a small claims exception, just like Vonage's, and addressing the mutuality of that arbitration agreement, the California Supreme Court said that the customer was likely to bring, almost every claim that a customer was likely to bring would come within the small claims court exception. So then doing the balancing, which isn't just a, you know, this isn't a balancing to see who is more likely than not. The standard for substantive unconscionability, which Sanchez also said, is excessively imbalanced. I wanted to ask you a question about that. Your reservation of the right to assign collection actions to a collection agency outside of arbitration, correct? What the second part of that exception says is that if Vonage assigns a claim for collection, then the arbitration agreement doesn't automatically apply. Right, so I'm trying to figure out if there's a balance between the two of those. There's nothing in this record about how large your collection claims are likely to be, is there? There is nothing in the record about that. It strikes me with a prepaid model they're not likely to be that large, but I'm just trying to figure out if there's a rough equivalence between those two. In other words, the consumer can go to court for little claims, and you can go to court for little claims, or is there an imbalance there? I think that's close to your honor. This is not a very expensive product. We're in a highly competitive market that competes with landline telephones and cell phones, and the court probably knows what you all pay on a monthly basis, and we're sort of in a similar market structure as that. So, you know, an unpaid, uncollected claim that Vonage might have. How do claims become uncollected with a prepaid model? I'm sorry, we're not, prepaid, I misunderstood the court. No, we have a monthly subscription service, and then we bill every month. Okay, gotcha. Just like other telephone providers. If the court would indulge it, would appreciate a few moments for rebuttal. Thank you, counsel. Thank you. May it please the court. My name is Cortland Reichman, and I represent the appellees. This case does not involve any novel applications of the law, whether it's the prime of paint law or the unconscionability law. It fits comfortably within the existing cases. Prime of paint says you need to look at the arbitration clause in particular and not at the agreement as a whole. That's what the district court, in this case, did. Concepcion says you cannot be applying a law that is targeted at or unique to arbitration agreements, and that's not what happened here. There's plenty of case law that says that California's unconscionability rules, its substantive unconscionability rules, looking at unfairly one-sided agreements survive Concepcion. When you look at- Can you, on that one, can we pick up where your opponent left off? The carve-out stuff, there's California cases prior to Concepcion that say that a carve-out is reserving some claims outside of arbitration and some inside is unconscionable if the ones that are kept outside are liable to be the ones that the drafter of the contract is gonna bring. That strikes me, and that's why I asked the question of your opponent, as an arbitration-specific rule that's only applied in the arbitration context. How does that survive Concepcion? Well, what Concepcion says is that they have to be generally applicable principles that would apply to a contract in general, and the test is the unfairly one-sided test. But that would mean everything survived Concepcion. No. Because everything is based on unfairly one-sided. Well, when it relates to unconscionability, I mean, let's, Concepcion was focused on the class-action arbitration. Yes, everything does survive, is what the cases say, when you're looking at an unfairly one-sided test. So there's ways in which non-arbitration provisions could be unfairly one-sided. If they say, for example, the statute of limitations for my claims is 10 years, and your claim is 10 days. Sure, no, but you're dealing at a relatively high level of generality there. The cases you cite that say that this provision is unconscionable are all cases that deal specifically with arbitration clauses, right? Of course, and in a way, my opponent made that point, but in a way, my sense is that that's a bit of a circular argument. Because of course we cited arbitration cases, because this is an arbitration case. If we cited cases from some other genre that looked at statute of limitations or merits, those wouldn't be applicable here. The unfairly one-sided case law applies across all parts of the contract. It's not arbitration specific. And I gave you an example earlier. It said, substantively, I get to keep all of my claims, and you don't get your claims. Well, that would be unfairly one-sided, and it's not related to arbitration or remedies or statutes of limitations. But that's a doctrine that would apply whether or not there's an arbitration clause in the contract. Here we have a doctrine that says, when dividing between arbitration and litigation, there's a certain way you must do it, or the contract will be unconscionable. I mean, that's what those cases say, isn't it? Well, I think all that, if we, let's start with the premise that there is a general unfairly one-sided law in California. And let's assume, for the sake of answering the question, that that survives concepcion. Well, Your Honor's argument would apply any time you took that unfairly one-sided test and applied it to arbitration agreements. And that's not what the law says. And my problem is the converse of that, which is that your argument would make every California arbitration-specific doctrine still applicable, because what underlies it is this notion of unfairness. So I'm trying to figure out where the middle ground is. I understand. And here's what I think the answer is to that question. This is not an arbitration-specific doctrine. It's simply the rule, look at the contract, whether in other cases you're looking at the big contract, or in this case, you're looking at the arbitration provision. And here's the standard district court for you to apply. Is it unfairly one-sided? Do you agree that we're dealing with the 2013 contract? We didn't argue that below. The district court assumed it for purposes of Are you assuming that, too? Well, I'm You haven't made any contrary arguments. The district court did not commit error in finding 2013 unconscionable. It was the defendant's position that that's what applied. The district court found it unconscionable. So I'm just asking, that's the contract we're looking at, right? Yes, it is. Yes, sir. So the unconscionable provisions that you identify in that contract are the ability to unilaterally modify the arbitration clause, right? Well, Yes? Is that an unconscionable? If we're talking about substantive unconscionability. Substantive, yeah. We're not, let's assume that it's procedurally unconscionable. The district court found what was substantive, and we're taking affirmance of the district court's ruling, and the district court based its substantive unconscionability ruling not on the modification clause. So you don't think that's at issue in this case? Well, I think it is a bolstering reason, but the district court found. OK, so I'm trying to ask you what we need to decide. So are you contending that the modification clause is substantively unconscionable or not? Secondarily, yes. The primary unconscionability in what the district court found, OK, this is not what the district court found, the district court found that the exceptions to section 1410 were in substance what the district court found is we don't have to arbitrate.  OK, good. That's substantively unconscionable. Is there anything else other than those? The district court did not rely on the modification for substantive unconscionability. On appeal, I would tell you under the doctrine of affirm for any reason that the modification clause also will bolster the substantive unconscionability. OK, assume we severed that out for a second or didn't deal with it. Are we only dealing with 1410? Yes, sir. OK. And are you arguing that the exception for collections is substantively unconscionable or not? It's all of it as a whole is unfairly one-sided. And it's unfairly one-sided because when you cut through it, what the district court found, and we agree, is that the net result is that the plaintiff and the customers have to arbitrate. Or they can go to small claims court. They have to arbitrate bigger claims. Or if they want lawyers or procedures or anything else, they have to arbitrate. But the defendants do not. Yeah, I'm just trying to isolate because it would be very helpful to us to isolate you. With respect to the small claims court exception, do you agree that your ability to take to, that it roughly balances out with their collections exception? No, sir. And here's why. They can go to court, regular old superior court. Well, they can't if it's a small claim. They can't if it's a bigger claim. I know, but that's my question. Is it a bigger claim or a smaller claim? It could be either, I believe. And I'm not positive that they can't go to court with a bigger claim. No, let's assume they've got a small claim. You really think they could file a $20 claim in superior court? I don't think they could. Isn't there a jurisdictional limit? I think there is a jurisdictional limit. But if they're getting up into anything above the $10,000 and $20,000. It's got to be $10,000 or $20,000, doesn't it, to get into superior court? Forget it. I'm unfortunately not an Arizonan, but the superior court jurisdictional limit there is $5,000 or $10,000. I don't believe it's that. Well, we unified the courts in California, so we don't have a municipal court. So we're not certain what the dollar limits are after unification. My understanding, that's what I'm saying, is not so certain. And I think that it's enough to say that they reserve for themselves any more substantial claims. They can go to court, and the plaintiff cannot. But I think for any claims, the way this is written, if you look at the words of it, it doesn't say, it'd be mutual, but said, we can take, in alternative to arbitration, we, Vonage, can take our claims to small claims court. It doesn't say that. It says, if we assign them, the person who's actually collecting the money can go to court. It's an exception to the arbitration, and that's unbalanced. So would you respond to your opponent's argument that these really aren't unbalanced carve-outs, because some of the claims are ones that only you are likely to bring? They're not going to be attacking your intellectual property, because you're just buying telephone service. Well, let me just, as a threshold, that's the first time we've heard that argument. It wasn't argued below. First time I've heard some of yours, too, so you respond. Wait a second. Didn't the district court rule that it was that the claims that are carved out were more likely to be brought by Vonage, like theft and intellectual property, than an individual purchaser of the service? Yes, Your Honor. That's where I was going. This validity argument, this new twist. And they're attacking that. So that's exactly the argument that they should be making. That's the argument, yes. But what the district court found was that the carve-outs, the net effect of the carve-outs was that, when you looked at the claims the parties were likely to bring, it means that Vonage's claims could go to court, but the plaintiff's claims had to go to arbitration. Well, but respond to his argument that, with respect at least to intellectual property, that's not true. That they're quite unlikely to be bringing an intellectual property claim against you. I think that they would be bringing it. I think it is, indeed, them that would be bringing an intellectual property claim. If somebody took some part of their service, their software code, for example, or their technology, or their trademarks, or anything else, and used those, they would want to stop the user. But are customers, subscribers, liable to be defendants and that kind of thing? I understood how competitors are. I think so. I think so. I think very much so in a piracy case, or a theft case, or any other kind of case. And they have reserved those rights for themselves to go to court, is what the district court says. Sure. No, the question is whether that's, we all agree they've reserved those rights. Let's put it this way. Whether it's unbalanced. Let's put it this way in terms of the imbalance, Your Honor. That's the question is, is there an imbalance? I can easily conceive of situations, and have litigated situations, where a carrier has to go after a customer on intellectual property violations. I can't possibly consider a case where a customer, using a phone service, is going to sue the phone carrier for violating the customer's intellectual property. There's only one way that provision is going. It's protecting Vonage's intellectual property, not the customer who's making a telephone call. Counsel, why don't we just sever it? That provision doesn't apply to your client anyway. We're not dealing with intellectual property. Right. So why don't we just sever it and move on? Because we're just making these hypotheticals, and going off into never, never land. Right, but we're reviewing the district court's decision not to sever. And what's the standard of review for that? Well, the standard, Your Honor, is abuse of discretion. Right. So we have to ask whether the district court judge abused her discretion by not severing. And let me answer your question directly. There were several provisions in this carve-out that, as a whole, considered together, were found to be unconscionable. And the question is, do we just, and as Vonage has argued, why don't you just strike the exceptions, and then we'll be good to go? It's easy enough to just put a blue pencil through them. And here's the reason why there's no abuse of discretion in refusing to do that. It's the type of case, this case law, that decided and is well-established about condoning illegality, rewarding illegality. Where does that leave the unconscionability doctrine? It leaves it here. Every case, every arbitration provision gets severed. And there's never an unconscionability finding, because you can always strike the offending provisions and just end up with, we both agree to arbitrate. Let me ask you about the district court's severability ruling, because I'm having, this is one reason I'm asking you both sides which contract we're dealing with. The district court said, I can't sever, because then I don't know what version of the contract I would have. And I'm having difficulty squaring that with the position that both sides take, that we're dealing with the 2013 version of the contract. In other words, I think what the district court was saying is, I don't know whether then I return to the 2006 contract or the 2004 one, or someone in between. And therefore, I don't want to. And I think the court thought that she probably had to sever the provisions that were added to the contract, might be added to the contract in between. But since you both concede we're dealing with the 2013 contract, isn't that reason for not severing just wrong? There are several different points that I'd like to make in response to that. First is, I want to be clear, we are not conceding, and did not concede below, that it was the 2013 agreement. Well, I don't understand what you're conceding. Are you arguing to us that it's a different agreement? I'm arguing that the district court's ruling should be affirmed. No, no. I'm asking you what agreement we're dealing with here. It's a very threshold question. Because the district court ruled on the 2013 agreement alone. And you don't attack that. You don't attack that. I'm not attacking that. OK, so we're dealing with the 2013 agreement. The district court says, I'm not sure what agreement I would have if I severed these allegedly unconscionable provisions. And I say, it's easy. You'd have the rest of the 2013 agreement. I don't know if that's the case. If it is, they're all merged together and combined as one. And it's only if a particular provision counteracts an earlier provision. And so you'd have to look back and figure out, OK, if these exceptions don't apply, then was there something in the next earlier one? Well, that's why I'm asking both sides the question. Which contract are we dealing with? If you want to be dealing with an earlier one, we got all kinds of different questions in this case than we do with respect to this one. But if you're dealing with this one, then it seems to me that just lopping off everything that you say is unconscionable, I understand your other argument, leaves us with this one. That's what I get. Isn't that true? I'm not sure it is true. And I want a placehold. I'll come back to it. That is not the only reason for the district court's request. Right, but I'm asking that question. Focusing on that particular one, I'm not sure that analytically, logically, that's true, Your Honor, that if these combined agreements, the 36 iterations of them, are all considered part of the agreement. Analytically, Your Honor, I think is correct, if it is the case that 2013 supersedes in all respects the prior agreements, then it stands to reason that it's just 2013. But I'm not sure it does. I think that there are parts of those prior agreements that remain in effect. And that's what the district court, it was not delved into, and it's not argued extensively on appeal. But that was her concern, that how do I go back to these agreements? Well, let me ask the question differently. If this 2013 agreement didn't have in it the carve-outs, the 14.10 provision, would it be unconscionable? Under the district court's reasoning, we argued other things. Right, right. Under the district court's reasoning, no, sir. It would not be unconscionable. But that does not mean you can just sever 14.10. Because then, I want to start with the incentive argument, but I want to come back to the judge's other reasoning. You could, as a company, if you wanted to, put any manner of unconscionable provisions in a contract, a list of 100 unconscionable exceptions and provisions long, knowing comfortably that in every case, if somebody found it unconscionable, you have to strike it. I agree with that. I agree with that. But here we're dealing with, I think you say, really one provision. No, sir. 14.10. Oh, 14.10 is one provision, but there's a number of exceptions within there. Yes, sir. It's 14.10. But it goes to the heart of the contract and attains the entire contract. This is not. Why does it go to the heart of the contract? You mean you wouldn't have taken service from Vonage had they put these claims in arbitration? That's not, is my understanding in reading the cases, ever the inquiry. The inquiry goes like this. Let's look at the counterexample. If it said, for example, that there is a limit on depositions and we get five and you get none and the court were to find that unconscionable, that could be struck because it's collateral to the central purpose of the agreement. But the central purpose of this agreement is you have to arbitrate, we don't. So to strike all of those unconscionable provisions cuts to the heart of what's going on in this arbitration provision. It's not collateral. In fact, I can't imagine something more central than this. I can't find a case or imagine something more central than saying you have to arbitrate, we don't. My understanding, and maybe I'm wrong, but I thought the reason she didn't think severance was appropriate was the unilateral modification, that it could be changed at any time. So that just severing a provision wouldn't mean that it would come out of this contract, but not appear in the next contract, or some form of it would not appear in the next time that they modified the contract. I think fairly right, Your Honor. That is a bolstering reason. She provides a list of reasons, and that's one of the bolstering reasons. Yeah, that's how I interpreted what she was saying. She had that unilateral modification issue in mind on this. I think that's right. And it also undergirds her finding, which again, I don't believe is abuse of discretion, that Vonage has engaged in a systematic effort to impose arbitration on subscribers, not simply as an alternative to litigation, but as an inferior form to work in Vonage's favor. All right, does anyone have any other questions? OK, thank you, counsel. He went three minutes over. You can have three minutes. Thank you, Your Honors. I will be brief. Just a couple bullet points in response to what my adversary said. First, on the version of the agreement that applies, excerpts of record page 102, which is the provision that identifies the modification power, states expressly that it supersedes all prior versions of the contract. And Vonage is not here trying to enforce the 04 and 06 agreements. That would be perverse. Vonage changed those agreements, those arbitration agreements, because the law changed. It said you can't force people to go to certain forums. We made these changes in order to improve them. If we had to defend the agreements that we don't even want to apply anymore, that would be a twist of what we were trying to do to make these agreements. Counsel, can you clear up one thing for me? Yes. Everybody agrees it's the 2013 agreement. How did it change from February of 2013, the arbitration provisions? Is there any change? So the last change, all the record shows is that the last change to the arbitration provision was in February 2012, and that it was 18 months until they filed their lawsuit. There were changes to the terms of service, but the record doesn't disclose what was the change that occurred in February 2012. So the record doesn't disclose it? Because I can find a 2004 agreement, a 2006, and the 2013, but I can't find anything in between. Correct. It wasn't sought by them in their discovery, which they carry the burden to demonstrate. And then tell me this. This 2013 agreement puts in all sorts of consumer-friendly provisions. You no longer have to arbitrate in New Jersey. You can arbitrate in the county where you live. You can arbitrate by telephone. You don't even have to appear. Vonage pays for the cost of all arbitration. Is that correct? That's correct, Your Honor. Yeah, Vonage was making these changes in order to improve them as the law changed. Is there any attack in this case as a substantive matter on the arbitration, on the substantive content of the arbitration clause itself? Other than the exception, Your Honor, no. And I wanted to point the court to the page excerpt of record 50, which was their opposition to our motion to compel arbitration. He told you a few moments ago that they have been secondarily challenging the substantive unconscionability of the modification power. Page 50 of the excerpt of record are the four things that they challenged below as substantively unconscionable in the 2012. And you'll read the whole page. You won't see the word modification power on there. They did not challenge that as a basis for substantive unconscionability. It was considered as procedural. Correct, Your Honor. I was just addressing to the conversation. I was just going to ask that question. We judge her wits about the substantive unconscionability. Yeah, much of the argument about that was a procedural argument. And that's why I was asking your opponent which things he thought were substantively unconscionable. I may address severability just very briefly, because it was a conversation the court had. The district court committed an abuse of discretion because she did not acknowledge the severability clause in the agreement. The severability clause in the agreement says expressly that the parties, which has been in every version, I should say, 04, 06 had a severability clause, and 2013 had a substantially identical severability clause. It said the parties want to maintain as much of this agreement as possible. And given the policy of the federal FAA, that is a strong policy in favor of arbitration. California's own policy, which we've cited in our most recent 28J letter, the Penella case decided last year, where California courts have held that when there is just one part of an arbitration agreement that's unconscionable, it should almost always be severed. Having found that here, plus the policies, plus the severability agreement, which the court didn't even mention, we believe that the district court did abuse her discretion in not severing these exceptions. The appropriate time to challenge the exceptions, we believe, would be if someone had brought a claim in court pursuant to the exceptions. And then you could sever those and force the party into arbitration instead. But here, a claim that's in the heartland of the core arbitration agreement, we believe that it should have been sent directly to the court. All right, thank you very much. Arbitrator, I'm sorry. Thank you. Oh, the arbitrator, right. We'll correct the record. Oops, you just lost the case. We'll correct the court. We'll correct the record. OK, Merkin v. Vonage is submitted. And this session of the court is adjourned for today. Thank you very much.
judges: Wardlaw, Hurwitz, Rice